SUSANA ALCALA WOOD, City Attorney (156366)
ARDELL JOHNSON, Assistant City Attorney (95340)
BRIAN EGGLESTON, Sr. Deputy City Attorney (289309)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California  95113-1905
Telephone Number: (408) 535-1900
Facsimile Number:  (408) 998-3131
E-Mail Address:  cao.main@sanjoseca.gov

Attorneys for Defendants CITY OF SAN JOSE
RYAN REYNOLDS; WALID HOQOQ
AND KEVIN MCCLURE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGELIQUE LOPEZ, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br><br>CITY OF SAN JOSE, et al.,<br><br>　　　　　Defendants. | Case Number:  5:24-cv-07926-NC<br><br>**DEFENDANTS' OMNIBUS DAUBERT MOTION**<br><br>Date:　　　　July 29, 2026<br>Time:　　　　9:00 A.M.<br>Location:　　Courtroom 5, 4th Floor<br>Judge:　　　Hon. Nathanael Cousins |

DEFENDANTS' OMNIBUS DAUBERT MOTION　　　　　　　　　　　　　　　5:24-cv-07926-NC

**<u>NOTICE OF MOTION</u>**

PLEASE TAKE NOTICE that on July 29, 2026 at 9:00 AM, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South First Street, San Jose, California, Defendants City of San Jose, Officer Ryan Reynolds, Officer Walid Hoqoq, and Sergeant Kevin McClure will, and hereby do, move this Court, pursuant to Federal Rules of Evidence 702 and 403, to exclude or limit the expert testimony of (1) Roger Clark, whom Plaintiffs proffer as a police-practices expert, and (2) Lincoln Han, whom Plaintiffs proffer as a judo and defensive-tactics expert. This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and declarations, all pleadings and papers on file in this action, and any oral argument that may be presented at the hearing of this matter.

**STATEMENT OF ISSUES TO BE DECIDED**

# **Table of Contents**

I.  INTRODUCTION ...................................................................................................................1

II.  FACTUAL SUMMARY.........................................................................................................1

    A.  OFFICER REYNOLDS AND ANGELIQUE LOPEZ.......................................................................1
    B.  OFFICER HOQOQ AND ALBERTO RAMIREZ .........................................................................2
    C.  SERGEANT MCCLURE AND ANDREW CERVANTES..................................................................2
    D.  EFRC REVIEW .................................................................................................................2

III.  LEGAL STANDARD ...........................................................................................................3

IV.  ARGUMENT..........................................................................................................................4

    A.  ROGER CLARK'S POLICE-PRACTICES OPINIONS SHOULD BE EXCLUDED, OR AT MINIMUM STRICTLY LIMITED. .......4
        1.  *Clark Should Be Excluded in Full Because This Video-and-Witness Graham Case Does Not Need His Legal Conclusions*.................................................................................................................. 4
        2.  *Clark's opinions fail Rule 702 because his methodology is predetermined, unfalsifiable, and not reliably applied.* .................................................................................................................. 5
        3.  *Clark Applies Hindsight and Injury Outcome Rather Than the Officer-at-the-Scene Perspective* ..................6
        4.  *Even If Not Excluded in Full, Clark's Opinions Should Be Excluded by Topic* ...............................................7
    B.  LINCOLN HAN'S JUDO AND DEFENSIVE-TACTICS OPINIONS SHOULD BE EXCLUDED, OR AT MINIMUM STRICTLY LIMITED. .................................................................................................................8
        1.  *Han's Report Is Facially Incomplete Under FRCP 26(a)(2)(B)(i)*.................................................................. 8
        2.  *Background: Han's Qualifications, Opinions, and Preparation* .................................................................. 9
        3.  *Han Lacks the Qualifications to Offer Police-Practices, POST, Excessive-Force, or Causation Opinions*.... 9
        4.  *Han's Opinions Lack a Sufficient Factual Basis* ......................................................................................... 9
        5.  *Han's Testimony Should Also Be Excluded Under Rule 403*...................................................................... 10

V.  CONCLUSION .....................................................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs have designated two experts for trial: Roger Clark, a police-practices expert who offers opinions on all three challenged uses of force, and Lincoln Han, a judo and defensive-tactics expert who offers opinions about Officer Reynolds's leg-sweep takedown of Angelique Lopez. Defendants hereby move to exclude or limit both experts under Federal Rules of Evidence 702 and 403.

Defendants request full exclusion of both experts. If the Court permits any testimony, Defendants request narrow limits that keep Clark from offering legal conclusions, credibility determinations, factual narration, state-of-mind opinions, medical-causation opinions, or what written policy materials mean, and keep Han limited to properly disclosed observations about named judo techniques visible in the surveillance footage.

### II.    FACTUAL SUMMARY

The three force events occurred late on May 5, 2024, during SJPD's Cinco de Mayo deployment near Monterey Road and Southside Drive in San Jose. Officers were initially assigned to sideshow-related traffic and crowd control. The relevant incident began after officers responded to a large fight or disturbance near La Canasta Market and the Rotten Robbie gas station. (EFRC Report at 2.)

The scene was not static or controlled. The EFRC described several hundred vehicles and spectators in the area, large groups remaining in nearby business parking lots, officers identifying people engaged in physical altercations, and a crowd of approximately 30 to 40 onlookers becoming confrontational and attempting to interfere as officers tried to separate people and detain suspects. (EFRC Report at 2.) The police report lists the incident offenses, including battery on a peace officer and resisting or obstructing a peace officer. (Police Report at 2.)

#### A.    Officer Reynolds and Angelique Lopez

Angelique Lopez alleges that Officer Ryan Reynolds's use of a leg-sweep takedown maneuver on her was excessive. However, she admitted at deposition that she intentionally kicked Officer Reynolds while he was walking her under arrest. (Lopez Depo. at 64:14–25.) Reynolds

1

DEFENDANTS' OMNIBUS DAUBERT MOTION                                    5:24-cv-07926-NC

testified that this was the second kick she directed at him, that she was twisting away while handcuffed, and that he performed the leg sweep because he did not want to be kicked again while controlling a resisting arrestee in a chaotic crowd-control scene. (Reynolds Depo. at 18:11–19; 22:1–5.) The EFRC found Officer Reynolds's use of the leg-sweep maneuver reasonable in light of the credible and immediate threat that Angelique posed. (EFRC Report at 7–8.)

### B.    Officer Hoqoq and Alberto Ramirez

Alberto Ramirez alleges that it was excessive force for Officer Walid Hoqoq to hit him in the face, an action that left no serious injuries. However, he admitted at deposition that he ran toward the officers, got in an officer's face, and yelled profanity at the officer. (Ramirez Depo. at 44:24–45:5; 110:1–6.) Hoqoq testified that Ramirez came toward him with another person, continued advancing with balled fists and one foot in front of the other, and was within about a foot in a fast-moving encounter lasting less than three seconds. (Hoqoq Depo. at 16:1–23; 44:15–45:10.) The EFRC found the strike reasonable in light of Ramirez's advance and the active struggle occurring next to Hoqoq. (EFRC Report at 4–5.)

### C.    Sergeant McClure and Andrew Cervantes

McClure testified that, during a large fight/arrest scene, several people were running or advancing toward officers who were trying to take people into custody; he positioned himself between the advancing group and the officers behind him so they were not injured. (McClure Depo. at 11:11–14; 12:14–24.) He estimated the group at approximately six people, testified they continued advancing while yelling angrily, and estimated he gave about ten "get back" commands before using OC spray. (McClure Depo. at 15:16–21; 16:24–17:2; 39:14–19.) Cervantes admitted that he was focused on Alberto and that the officer may have said something he did not hear. (Cervantes Depo. at 103:21–104:4.) The EFRC concluded that the OC deployment was targeted at that specific advancing group and that an explicit OC warning was not necessary or advisable because it would have allowed the group time to shield themselves. (EFRC Report at 7.)

### D.    EFRC Review

The SJPD's own Executive Force Review Committee reviewed BWC recordings, independent surveillance footage, CAD records, dispatch audio, photographs, and the police report.

DEFENDANTS' OMNIBUS DAUBERT MOTION                    5:24-cv-07926-NC

It concluded that each use of force was objectively reasonable, necessary, within policy, and consistent with training; that Reynolds's leg sweep was an objectively reasonable response to Lopez's kick while handcuffed; that Hoqoq's strike was a reasonable response to Ramirez advancing into the officers' immediate area while officers were physically engaged with Lopez; and that McClure's OC deployment was targeted at a specific advancing group that posed an imminent threat, not an indiscriminate crowd spray. (EFRC Report at 6–7.)

## III.    LEGAL STANDARD

Federal Rule of Evidence 702, as amended in 2023, requires the proponent to demonstrate by a preponderance of the evidence that an expert's testimony (a) will help the trier of fact, (b) is based on sufficient facts or data, (c) is the product of reliable principles and methods, and (d) reflects a reliable application of those principles and methods to the facts. Fed. R. Evid. 702. Daubert's gatekeeping obligation requires the Court to ensure expert testimony is relevant and reliable, and Kumho Tire extends that gatekeeping obligation to experience-based technical experts. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147–49 (1999).

When an expert relies on experience, the Court must still examine whether the witness applies the same level of intellectual rigor that characterizes the relevant field and whether the opinion is connected to the facts by more than the expert's say-so. *Kumho Tire*, 526 U.S. at 152; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony also may not give an opinion on an ultimate issue of law. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Expert opinions as to what the law mandates, whether defendants were legally justified, or whether a constitutional standard was violated usurp the jury's role and should be excluded or strictly limited under Rules 702 and 403. Fed. R. Evid. 702, 403; *Hangarter*, 373 F.3d at 1016–17; *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017).

3

## IV.    ARGUMENT

### A.    Roger Clark's police-practices opinions should be excluded, or at minimum strictly limited.

#### 1.    Clark Should Be Excluded in Full Because This Video-and-Witness Graham Case Does Not Need His Legal Conclusions

This case involves three force events, which unfolded in seconds and will be tried through percipient testimony, BWC footage, surveillance footage, and the Graham factors. The disputed questions are what happened, what each officer perceived, whether Plaintiffs were (or appeared to be) resisting or threatening, and whether the force used was objectively reasonable. *See Graham*, 490 U.S. at 396–97. Those are jury questions, not expert questions. *Robinson v. Dote*, No. 5:19-cv-06768-NC, Dkt. 91 at 2 (N.D. Cal. Nov. 6, 2021); *Valiavicharska v. Celaya*, 2012 U.S. Dist. LEXIS 8191, at *12–14.

Clark's proposed testimony does not add specialized knowledge. He interprets video, chooses between competing accounts, evaluates threat, and then applies Graham-like POST language to announce the result. The jury can watch the same footage and apply the Court's instructions. Courts have rejected this kind of video narration, legal-standard application, and credibility assessment as improper expert testimony. *Robinson*, Dkt. 91 at 2; *Pachote v. County of Contra Costa*, No. 21-cv-04097-SK, Dkt. 141 at 5–7 (N.D. Cal. Aug. 1, 2025); *Valiavicharska v. Celaya*, No. CV 10-4847 JSC, 2012 U.S. Dist. LEXIS 8191, at *6–14 (N.D. Cal. Jan. 24, 2012); *Day v. County of Contra Costa*, No. C 07-4335 PJH, 2008 U.S. Dist. LEXIS 93487, at *61–62 (N.D. Cal. Nov. 10, 2008). Clark himself admitted that determining whose version matches video is within the jury's purview. (Clark Depo. at 103:19–23.)

Rule 403 independently supports exclusion. Clark's retired-lieutenant title would give outsized weight to inflammatory labels such as "illegal criminal conduct," "false police reports," and "callous disregard," while inviting mini-trials over POST excerpts, SJPD policy, the EFRC process, officer credibility, and "street justice" rhetoric. Any slight probative value is substantially outweighed by unfair prejudice, confusion, waste of time, and cumulative presentation. Fed. R. Evid. 403; *Robinson*, Dkt. 91 at 2.

DEFENDANTS' OMNIBUS DAUBERT MOTION                                    5:24-cv-07926-NC

**2.    Clark's opinions fail Rule 702 because his methodology is predetermined, unfalsifiable, and not reliably applied.**

Clark testified that his opinions would remain unchanged even if based solely on the police report; even if the EFRC facts and findings were accepted; even if Lopez posed a credible threat of serious bodily injury or death to Reynolds; even if Angelique and Alberto were the aggressors; even if warnings and commands were given; even if Ramirez fell because another officer pushed him; and even if all defense-favorable facts in his report were credited while all plaintiff-favorable facts were discredited. (Clark Depo. at 117:18–118:23; 121:7–24; 123:8–124:5; 133:16–20; 140:2–19; 143:14–16.) That is not reliable application to facts; it is pre-commitment. An opinion invulnerable to any factual input is a predetermined conclusion, not a reliable methodology. *Cf. Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502–03 (9th Cir. 1994) ("Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method.").

When asked to describe how he determines whether force is excessive, Clark identified his method as: "consider all the facts, include the professional standards and give it your best judgment." (Clark Depo. at 81:14–82:8.) He offered no testable procedure, no objective threshold, and no mechanism for verification, except considering how persuasive or logical his reasoning seems. (Clark Depo. at 128:8–25.) When asked whether there was "any independent source" he could point to that could show his analysis was correct, his response was to philosophize about abstract notions of justice: "The only thing I would refer to is the foundation of our country and the Constitution, equal application of the law, the expression of dignity, how people are to be treated equally, how to deescalate, how to tactically approach…." (Clark Depo. at 129:1–130:2.) When asked if there was any other way—other than such philosophizing—to determine whether his application of POST standards was correct and the EFRC's was wrong, he answered: "nothing else comes to mind." (Clark Depo. at 130:3–10.) He cannot reliably apply a method he cannot define and that is never capable of being disproven.

When asked about his error rate, Clark conceded that determining error in his analysis would essentially be the same as determining the persuasive value of his analysis, comparing it to "politics and religion." (Clark Depo. at 88:1–22.) Nor does he refine his methodology to account for jury

verdicts that disagree with his conclusions, thus rendering his methodology essentially unfalsifiable. (Clark Depo. at 84:6–15; 88:18–22.) That kind of subjective ipse dixit fails Rule 702(c) and *Daubert*. Fed. R. Evid. 702(c); *Daubert*, 509 U.S. at 593–94; *Joiner*, 522 U.S. at 146; *Guidroz-Brault v. Missouri Pacific Railroad*, 254 F.3d 825, 829 (9th Cir. 2001).

Over the last four years, every one of Clark's civil excessive-force opinions has favored the plaintiff side. (Clark Depo. at 23:20–24:9.) He has never formed an opinion that force used against a plaintiff was reasonable when retained by a plaintiff. (Clark Depo. at 20:25–21:4.) His intake method guarantees this: he reviews the materials for two to three hours on an unpaid basis, forms a conclusion, communicates it to counsel, and then counsel makes the choice to retain or not retain. (Clark Depo. at 34:17–37:13.) As a result of that procedure, the vast majority of his analysis in this case—and the only analysis that he was compensated for—occurred after he had already formed an opinion that the use of force was unreasonable. (Clark Depo. at 36:10–13; 47:14–22.) This pre-commitment circuit is not ordinary witness bias that goes only to weight; it is a systematic practice that undermines the independent expert inquiry Rule 702 requires.

**3.      Clark Applies Hindsight and Injury Outcome Rather Than the Officer-at-the-Scene Perspective**

Graham v. Connor requires reasonableness to be assessed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Clark's method inverts this standard. His core frame for the Reynolds/Lopez event is the injury outcome: "[T]he opinion is focused on Angelique being subject to a force that caused a catastrophic injury — blows to the head — a blow to the head that provided a — or caused a brain injury." (Clark Depo. at 115:19–23.) He admitted he "didn't bother" resolving factual disputes or determining which version of the events to base his opinion on. (Clark Depo. at 116:18–117:1.) An analysis that starts from the severity of the outcome — rather than from what the officer knew and perceived at the moment force was used — conflicts with Graham and is unhelpful to the jury under Rule 702. *Graham*, 490 U.S. at 396.

This hindsight-outcome methodology also bleeds into medical causation. Clark frames Opinion 3 around Lopez suffering a skull fracture and brain bleed, and Opinion 4 around

"catastrophic injuries." (Clark Report at 19–21.) Plaintiffs proffer Clark as a police-practices expert, and the current report and deposition identify no medical, biomechanical, or injury-causation methodology for assigning medical causation or using injury severity to prove excessive force. (Clark Report at 19–22; Clark Depo. at 80:24–82:8; 115:19–23.) Clark therefore should not be permitted to testify that Reynolds caused Lopez's skull fracture, that any specific contact caused Ramirez's facial injury, or that injury severity proves force was excessive.

### 4. Even If Not Excluded in Full, Clark's Opinions Should Be Excluded by Topic

If the Court does not exclude Clark in full, each of the following categories of testimony is independently inadmissible under Rules 702 and 403.

Clark should not be permitted to testify that any officer's force was "excessive," "unreasonable," "unnecessary," "unconstitutional," "illegal," "criminal," "unjustified," or "immoral"; that officers violated constitutional rights, law, Penal Code provisions, POST guidelines as law, or SJPD policy as law; that Plaintiffs had a legal right to resist or intervene; that officers acted with "callous disregard"; or that reports were false crimes under Penal Code Section 118.1. Clark's report uses these or materially similar labels. (Clark Report at 19–22.) Each formulation applies the governing legal standard to the facts and tells the jury what verdict to render. That is the quintessential improper expert opinion. *Pachote*, Dkt. 141 at 4–5; *Valiavicharska*, 2012 U.S. Dist. LEXIS 8191, at *6–14; *Barnhill*, 2026 U.S. Dist. LEXIS 124137, at *10–12; *Day*, 2008 U.S. Dist. LEXIS 93487, at *61–62.

Clark's report also reprints lengthy POST excerpts — including the entirety of a passage from Learning Domain 22 about the moral obligations of officers, which Clark considered 'so important' he reproduced it in full. (Clark Depo. at 129:18–130:2.) Using an expert as a vehicle to read POST provisions to the jury is not proper expert opinion; it is a mechanism for delivering jury instructions dressed up as police-practices testimony.

Clark should not be permitted to testify about what he believes happened in any of the three force events, what any video shows, or whether any Plaintiff posed a threat to the officers. Clark's report frames the videos as contradicting officers, states that Plaintiffs posed no credible threat,

DEFENDANTS' OMNIBUS DAUBERT MOTION                    5:24-cv-07926-NC

characterizes Hoqoq's contact as a baton strike, characterizes Reynolds as intentionally slamming Lopez, and rejects McClure's threat assessment. (Clark Report at 19–22.) Those are factual and credibility determinations for the jury, not expert conclusions. *Robinson*, Dkt. 91 at 2; *Valiavicharska*, 2012 U.S. Dist. LEXIS 8191, at *12–14; *Pachote*, Dkt. 141 at 5–7.

Clark's Opinion 6 — that officers filed false police reports, conditioned on accepting Plaintiffs' version of events — is inadmissible. This is premised on a credibility determination: Clark accepts Plaintiffs' account over the officers' account to reach the "false report" conclusion, while simultaneously acknowledging that determining whose version matches video is within the jury's purview. (Clark Report at 1, 21–22; Clark Depo. at 103:19–23.)

Clark's report includes characterizations that Reynolds became "instantly enraged," that Hoqoq acted with specific intent, and that officers demonstrated "callous disregard." (Clark Report at 19–22.) Those are state-of-mind opinions. The current record does not identify a reliable psychological or mental-state methodology supporting those opinions, and such opinions would invite the jury to accept Clark's view of subjective intent rather than decide intent from admissible evidence.

**B.    Lincoln Han's judo and defensive-tactics opinions should be excluded, or at minimum strictly limited.**

**1.    Han's Report Is Facially Incomplete Under FRCP 26(a)(2)(B)(i)**

Han admitted at deposition that his expert report does not contain all the opinions he intends to offer at trial. (Han Depo. at 36:4–8.) He could not identify what additional opinions he holds or in what form they would be offered. (Han Depo. at 36:13–37:2.) Rule 26(a)(2)(B)(i) requires the expert's report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). A report that, by the expert's own admission, is incomplete fails this requirement on its face. The proper sanction is exclusion of any undisclosed opinions under Rule 37(c)(1). Fed. R. Civ. P. 37(c)(1); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212–13 (9th Cir. 2008).

DEFENDANTS' OMNIBUS DAUBERT MOTION                                    5:24-cv-07926-NC

## 2.    Background: Han's Qualifications, Opinions, and Preparation

Han is a seventh-degree black belt and judo instructor who teaches voluntary seminars to military and law enforcement personnel. (Han Depo. at 24:21–25:5; 95:16–96:3.) He has never served as a peace officer, never worked for or taught at a California police academy, holds no POST certification, and had no comprehensive knowledge of California POST training. (Han Depo. at 26:13–27:6; 85:11–86:5.)

His report opines that Reynolds used a judo-based takedown, performed it poorly, used force that was "excessive" and "disproportional to the threat perceived," and may have acted "out of a sense to punish." Han admitted the punishment theory is "speculation." (Han Depo. at 119:9–17.)

Han spent 1.5 to 2 hours drafting the report, reviewed only a silent surveillance video and Reynolds's deposition, used no reference materials beyond personal knowledge, destroyed his working notes and screenshots, and self-edited the video clips he considered significant. (Han Depo. at 22:1–3; 22:22–23:2; 40:6–44:4; 44:15–45:18.) He did not review core case materials or interview any witness. (Han Depo. at 46:16–50:24.)

## 3.    Han Lacks the Qualifications to Offer Police-Practices, POST, Excessive-Force, or Causation Opinions

Han is a judo instructor, not a police-practices expert. He has never been a peace officer, has never worked for a police department, has never attended or taught at a California police academy, holds no POST certification, and learned about POST during his deposition lunch break. (Han Depo. at 26:13–28:4; 85:10–11; 97:14–25.)

His law-enforcement-adjacent teaching does not cure the gap. The seminars were optional, not officer-certification curriculum, not reviewed or approved by a law-enforcement agency, not based on POST curriculum, and not audited or peer-reviewed for compliance with any departmental standard. (Han Depo. at 24:21–25:5; 95:16–96:3.) Teaching voluntary judo seminars does not qualify him to evaluate a California officer's on-duty force under police standards.

## 4.    Han's Opinions Lack a Sufficient Factual Basis

Han formed his opinions from only two materials: one silent surveillance video and Officer Reynolds's deposition transcript. (Han Depo. at 44:15–45:18.) He did not review the Complaint,

DEFENDANTS' OMNIBUS DAUBERT MOTION                                  5:24-cv-07926-NC

Lopez's deposition, any police report, SJPD's use-of-force review, body-worn camera footage, dispatch records, medical records, scene photographs, scene measurements, or any witness interviews. (Han Depo. at 46–50.)

The gap matters because Han admitted he had no context of the overall situation and the tension and threats the police may have felt, and he did not know Reynolds testified he acted because he did not want to be kicked again and injured. (Han Depo. at 51:12–20; 86:18–87:15.) An expert who ignores core context has not reliably applied any method to the facts of the case. Fed. R. Evid. 702(b), (d); *Joiner*, 522 U.S. at 146; *Guidroz-Brault*, 254 F.3d at 829.

### 5.    Han's Testimony Should Also Be Excluded Under Rule 403

Even if some portion of Han's testimony survived Rule 702, Rule 403 warrants exclusion. Fed. R. Evid. 403, 702. Han and Clark both seek to characterize Reynolds's force as excessive from video review; allowing both experts to narrate the same footage toward the same legal conclusion would compound unfair prejudice, confuse the issues, and waste trial time. Fed. R. Evid. 403; *Robinson*, Dkt. 91 at 2.

Han's judo terminology gives technical gloss to lay video observations, while his "sense to punish" statement invites the jury to infer subjective motive from an expert who did not review the police report, did not know Reynolds's stated reason for acting, and admitted the point was "speculation." (Han Depo. at 119:9–17.) That risk substantially outweighs any probative value. Fed. R. Evid. 403.

## V.    CONCLUSION

For these reasons, Defendants respectfully request that the Court exclude Roger Clark's and Lincoln Han's testimony in its entirety under Federal Rules of Evidence 702 and 403.

If the Court permits any expert testimony, Defendants request the limiting orders described above. Clark should be limited, if at all, to properly framed general training concepts or hypotheticals based on admitted trial evidence, with no legal conclusions, credibility determinations, factual narration, state-of-mind opinions, medical-causation opinions, or policy/training mini-trials. Han should be limited, if at all, to properly disclosed testimony about whether visible movements in the surveillance video are consistent with named judo techniques and

DEFENDANTS' OMNIBUS DAUBERT MOTION                                    5:24-cv-07926-NC

general attributes of those techniques, with no opinions on police practices, POST or SJPD standards, legal reasonableness, Reynolds's state of mind, physics, biomechanics, medical causation, or undisclosed opinions.

Respectfully submitted,

Dated:  June 18, 2026                    SUSANA ALCALA WOOD, City Attorney

By:  /s/ Brian Eggleston
              BRIAN EGGLESTON
              Sr. Deputy City Attorney

Attorneys for CITY OF SAN JOSE

11

DEFENDANTS' OMNIBUS DAUBERT MOTION                         5:24-cv-07926-NC