Gustavo Magaña (SBN 305970)
The Law Office of Gustavo Magaña
4701 Patrick Henry Dr. Bldg 16 Suite 15F
Santa Clara, CA 95054
T: (408) 430-0411
F: (800) 650-9326
E: Gmaganaesq@gmail.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Angelique Lopez, et al, <br><br> Plaintiff, <br><br> vs. <br><br> City of San Jose, et al., and DOES 1-10, inclusive; <br><br> Defendants. | **Case No**.: 5:24-cv-07926-NC <br><br> Date: July 29, 2026 <br> Time: 11:00 a.m. <br> Dept: Courtroom 5-4th floor <br> Judge: Hon. Nathaniel Cousins <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' DAUBERT MOTION TO EXCLUDE PLAINTIFFS' USE OF FORCE EXPERT ROGER CLARK AND LEG SWEEP EXPERT LINCOLN HAN** |

**Table of Contents**

1. A.B. v. Cnty. of San Diego, No. 18cv1541-MMA-LL, 2020 U.S. Dist. LEXIS 136760 (S.D. Cal. July 31, 2020)……………………………………………………………………………10

2. Abuka v. City of El Cajon, No. 17-cv-89-BAS-NLS, 2019 LX 33077 (S.D. Cal. Mar. 7, 2019)……………………………………………………………………………………….6

3. *Bonner v. ISP Technologies, Inc.*, 259 F. 3d 924, 930 (8th Cir. 2001)…………………..7

4. Claar v. Burlington N. R.R., 29 F.3d 499 (9th Cir. 1994)………………………………...13

5. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993)…………..6, 7, 8

6. *Feliciano-Hill v. Principi*, 439 F.3d 18, 25 (1st Cir. 2006)…………………………..7

7. Humetrix, Inc. v. Gemplus S.C.A., 268 F.3d 910 (9th Cir. 2001)……………………………8

8. *Huntzinger v. Coyle*, No. CV 5:17-184-KKC, 2022 WL 95280 at *4 (E.D. Ky. Jan. 10, 2022)………………………………………………………………………………………..6

9. In re Viagra Prods. Liab. Litig., 572 F. Supp. 2d 1071………………………………………..8

10. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999)……………………7

11. Shirar v. Guerrero, No. EDCV 13-906 JGB (DTBx), 2017 LX 69660 (C.D. Cal. Aug. 2, 2017)………………………………………………………………………………………5

12. Smith v. City of Oakland, 538 F. Supp. 2d 1217 (N.D. Cal. 2008)…………………………6

13. Solis v. City of L.A., No. LA CV 17-02352-AB (PJWx), 2018 LX 50326 (C.D. Cal. June 6, 2018)………………………………………………………………………………………..6

14. Vaughn v. City of L.A., No. CV 16-03086-AB (AJWx), 2017 LX 24940 (C.D. Cal. Oct. 30, 2017)………………………………………………………………………………………6

**Rules:**

Federal Rule of Civil Procedure 702……………………………………………………..7, 13

Federal Rule of Civil Procedure 703…………………………………………………………7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION

**Table of Authorities**

I.    **Memorandum of Points and Authorities—Introduction**……………………**3**

II.   **Legal Standard**……………………………………………………………**6**

III.  **Argument**…………………………………………………………………..**8**

    1.  Regarding Testimony About Injuries……………………………………8

    2.  Regarding the Analysis of Videos by Mr. Clark……………………….9

    3.  Regarding Mr. Clark's Opinions on the Reasonableness of Force……………10

    4.  Regarding Alleged Credibility Determinations …………………………11

    5.  Regarding Mr. Clark's Opinion About the Level of Resistance of Each Plaintiff………………………………………………………………12

    6.  Regarding Mr. Clark's Opinions Allegedly Failing Rule 702 Based on Methodology…………………………………………………………13

    7.  Regarding the Relevance of Mr. Clark's Case Intake Methods…………………14

    8.  Regarding Lincoln Han's Expert Testimony on the Technical Application of Leg Sweeps…………………………………………………………14

    9.  Regarding Mr. Han's Report Allegedly Being Incomplete……………………16

IV.   **Conclusion**…………………………………………………………………**16**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case involves the May 5, 2024, use of force against three separate plaintiffs, Angelique Lopez, Alberto Ramirez, and Andrew Cisneros by Defendants Ryan Reynolds, Walid Hoqoq, Kevin McClure, and the San Jose Police Department.

On 5/5/24, the Plaintiffs were walking through an area where many people were celebrating Cinco de Mayo. During the evening, a commotion occurred involving Ms. Lopez's friend. When Ms. Lopez attempted to see if her friend was ok by running towards the commotion, Defendant Hoqoq aggressively shoved her to the floor, (Defense Exhibit L, Lopez tx, pg. 35:23-25/pg 36:1-2; Defense Exhibit F Hoqoq tx; pg. 9:13-21) and Ms. Lopez's baby brother, a minor at the time, Mr. Ramirez, stood in between Hoqoq and Ms. Lopez's downed body in the hopes of shielding her with his body from further attacks. Minor Ramirez did not strike or attempt to strike Hoqoq. (Defense Exhibit L, Lopez tx, pg. 46:18-25/47:1;Defense Exhibit F Hoqoq tx; pg. 14:14-23) Defendant Hoqoq then intentionally hit Minor Ramirez with a baton in the face and made him crumple to the floor. (Defense Exhibit J, pf. 45:9-11; Defense Exhibit L Lopez tx, pg. 46:2-8; Defense Exhibit F Hoqoq tx; pg. 26:6-9)

Defense Expert Tassio opines that Defendant Hoqoq only used his fist, even though the video contradicts this, as well as multiple verbal statements on bodycam at the scene by Hoqoq himself telling co-workers that he hit Minor Ramirez with a baton.  Even so, Defense expert Tassio makes a credibility determination and intends to explain to the jury what the video shows in terms of whether a baton or hand strike was used. (Plaintiff Exhibit 1 Tassio First tx; pg. 14:11-22, Defense Exhibit H, pg 3:¶6; pg. 5:¶2; pg 6:¶6)

Thereafter, Ms. Lopez attempted to assist her baby brother and punched an officer who had jumped on top of him. She was removed, and later Officer Reynolds was asked to complete her arrest. It should be noted that Defendant Reynolds had no knowledge that Ms. Lopez had attacked or punched any officer when he was arrested and detained her through the use of force alleged in

the complaint. (Defense Exhibit E Reynolds tx; pg.11:10-15)

Thereafter, while walking Ms. Lopez forward, who was handcuffed behind her back, she raised her leg and hit Defendant Reynolds' knee, who stepped to the side and then made the decision to perform a leg sweep he had never done before and was unsure of how to properly perform. (Defense Exhibit E Reynolds tx; pg.24:17-20)  Defendant Reynolds testified he was unsure how much training he received on how to perform leg sweeps and that he was never trained on how to perform the leg sweep he tried, nor was he able to provide any insight on whether or not he attempted to guide or assist Ms. Lopez to the ground safely as Defendant's Expert Tassio speculates based on his review of the video. (Defense Exhibit E Reynolds tx; pg.27:1-4; pg. 31:22-25/pg 32:1-2). In fact, Defendant Reynolds admitted he was only trying to protect himself and not Ms. Lopez. (Defense Exhibit E Reynolds tx; pg.55:2-16) Additionally, Defendant's Expert Tassio admits he never interviewed Defendant Reynolds about what he allegedly did to control the Ms. Lopez's fall or protect her from harm, nor did he take the time to read Defendant Reynolds' deposition transcript where he describes that he doesn't really know what he did, if anything. (Plaintiff Exhibit 1 Tassio First tx pg 32:17-21;pg 35:11-24)

Further, Mr. Cisneros saw that his minor son was being roughed up on the floor, in his opinion, and attempted to ask Defendant McClure about the use of force and why they were treating his son in that manner. (Plaintiff Exhibit 3 Cervantes tx pg 56:3-8) Defendant McClure failed to answer his questions, and at no time did Mr. Cisneros attempt to attack or threaten to attack Defendant McClure or any other officer at the scene (Defense Exhibit K Cervantes tx pg 119:1-3). Additionally, Defendant McClure, who was being assisted by other armed officers in addressing Mr. Cisneros and others asking questions, then promptly used a chemical agent against Mr. Cisneros without providing a warning, even though it was feasible and in accordance with San Jose Policy. (Defense Exhibit K Cervantes tx pg 65:20-24)

Defendant repeatedly cites to Defense Expert Lee Tassio's use of force report, which outlines all of the opinions he plans to provide at trial. His report specifically states that the use of force by all three Defendants was reasonable, justified, and in accordance with POST standards and

-4-

San Jose Police Department policy.

However, shockingly, Defendants see no problem with their expert providing these opinions to the jury

Defendant now seeks to exclude the various areas of testimony of Plaintiffs' retained police practices expert, Roger Clark, including but not limited to his opinions that the use of force by each Defendant was unreasonable, any medical opinions, testimony about the videos, legal conclusions, irrelevant opinions, and speculative and unreliable opinions. However, Mr. Clark is more than qualified to offer his opinions as a police practices expert, and as is explained in detail below, the Defendants' police practices expert offers many of the same opinions that the Defendants now seek to exclude. Since Mr. Clark is qualified to offer opinions as a police practices expert, and because many of the opinions that Defendants seek to exclude are being offered by Defendants' own expert as outlined in their use of force report, Defendant's Exhibit H, Defendants' Motion should be denied in its entirety.

Further, Defendant's motion to exclude Plaintiff's expert, Lincoln Han, should also be denied, as his proposed testimony related to his expertise in leg sweeps should be admitted. Specifically, because Defendant's expert Tassio intends to provide testimony on the technical aspect and application of Defendant Reynolds leg sweep, even though it is not based on prior training in that type of leg sweep and even though he is unable to explain or back up his opinion that Defendant Reynolds helped prevent further injury to Ms. Lopez by holding onto her and allegedly guiding her during the fall. Defense Expert Tassio merely intends to say that's how he feels and what he believes and refuses to provide a basis in physics or logical reasoning regarding his opinion. (Plaintiff Exhibit 1 Tassio First tx; pg. 47:23-25/pg. 48:1-25/pg.49:1-17)

Further, Courts around the country, and the Ninth Circuit in particular, have relied on Mr. Clark's expert testimony and reports to render their decisions. *See e.g. Shirar v. Guerrero*, No. EDCV13906JGBDTBX, 2017 WL 6001270 at *12 (C.D. Cal. Aug. 2, 2017) (admitting Clark's

testimony as to "whether the conduct by the officers complied with POST standards in the use of force."); *Vaughn v. City of Los Angeles*, No. CV1603086ABAJWX, 2017 WL 8786868 at *4 (C.D. Cal. Oct. 30, 2017) (admitting Clark's testimony "including but not limited to: (1) the deployment and/or use of a Taser and the LAPD's policies regarding the Taser; (2) bullet trajectories; (3) hobble restraint device ('HRD'); and (4) compelled blood draw."); *Smith v. City of Oakland*, 538 F. Supp. 2d 1217 (N.D. Cal. 2008) (admitting Clark's testimony "on the failure of the officers to follow standard procedures"); *Solis v. City of Los Angeles*, No. LACV1702352ABPJWX, 2018 WL 4998261 at *2 (C.D. Cal. June 6, 2018) (admitting Clark's testimony regarding his "opinions as to the chain of events caused by [Officer Defendant's] physical location."); *Abuka v. City of El Cajon*, No. 17-CV-347-BAS-NLS, 2019 WL 1077495 (S.D. Cal. Mar. 7, 2019); *Huntzinger v. Coyle*, No. CV 5:17-184-KKC, 2022 WL 95280 at *4 (E.D. Ky. Jan. 10, 2022) (admitting Clark's testimony based on his review of "the Complaint; various photographs; various [police department] manuals; [Plaintiff's] medical records; a post-shooting audio recording of [Plaintiff's] interview; a transcript of [Plaintiff's] post-shooting interview; various 3-D recreations of the incident; relevant deposition transcripts; [Plaintiff's] Motion for Summary Judgment; a relevant article in Police Magazine; and satellite imagery of the scene of the incident."). His report in this case clearly and concisely lays out the factual basis for his opinions, which he takes care to relate directly to his expertise in the realm of POST training, the very same training that Defendants' experts rely on when updating their policies and duty manuals. See Defense Exhibit H. Defendants may disagree with Mr. Clark's conclusions, but ultimately his credibility is a matter for the jury to decide.

## II.    LEGAL STANDARD

The gatekeeping requirement of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

579 (1993) is to ensure the reliability and relevancy of expert testimony; "it is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  The Court must assess (1) the expert's qualification to present the opinions offered, (2) "whether the reasoning or methodology underlying the testimony is scientifically valid," and (3) "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.  In analyzing whether an expert's testimony is admissible, courts consider whether the expert's testimony is relevant (helpful to the jury) and reliable.  *Daubert*, 509 U.S. at 589, 591-92.  When assessing an expert's qualification to present the opinions offered, courts look to Federal Rules of Evidence, Rules 702 and 703. *Id*. at 592.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Federal Rules of Evidence, Rule 703, provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Although expert opinions must be reliable, a trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Kumho*, 526 U.S. at 152.  Defendants cannot use this standard to exclude an expert's opinions just because they disagree with the expert or the expert's opinions are unfavorable to their position.  *See Feliciano-Hill v. Principi*, 439 F.3d 18, 25 (1st Cir. 2006) ("The mere fact that two experts disagree is not grounds for excluding one's testimony."); *Bonner v. ISP Technologies, Inc.*, 259 F. 3d 924, 930 (8th Cir. 2001) ("Although it

is common that medical experts often disagree on diagnosis and causation, questions of conflicting evidence must be left for the jury's determination."); *In re Viagra Products Liability Litigation*, 572 F. Supp. 2d 1071, 1078 (D. Minn. 2008) ("only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Defendants' "recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of [their] own expert witnesses." *Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001). As explained further below, Defendants has designated its own use of force expert, Lee Tassio, who intends to proffer testimony including legal conclusions and that each Defendant officers use of force was reasonable,, was consistent with police officer standards, training and tactics, as well as testimony regarding what is shown on the videos of the incident, credibility determinations regarding each Defendant's claims, such as that Defendant Hoqoq struck Minor Ramirez with his fist rather than a baton, that it was not feasible for any Officer to give a warning before using force, and that Defendant Reynolds technical application of his leg sweep allegedly guided and prevented further injury to Ms. Lopez.

### III.    ARGUMENT

#### 1.    Regarding Testimony About Injuries

Defendants argue that Plaintiffs' police practices expert, Roger Clark, has medical opinions that should be excluded at trial. The alleged medical opinions specified by the defense include Mr. Clark's reference to Ms. Lopez suffering a skull fracture. Plaintiffs want to clarify that there is no intent to have Mr. Clark provide any medical opinions regarding causation. Plaintiff has no issue with the court limiting Mr. Clark's testimony regarding a medical diagnosis or interpretation of medical imaging.

However, the danger of smashing a suspect's face/head first into concrete is not a medical opinion; it is part of general POST training and is encompassed within San Jose Policies

regarding which types of strikes and uses of force are allowed and why. Mr. Clark will be opining as to whether the use of force was appropriate and whether it violated police officer standards, training, and tactics, and the fact that Ms. Lopez was slammed headfirst into concrete is part of the analysis regarding the appropriateness of the use of force, both deadly and non-deadly.  Moreover, Mr. Clark is familiar with leg sweeps, baton strikes, and chemical agent sprays.  Mr. Clark intends to opine on the designation of the category of force each use of force falls into, i.e., intermediate force or deadly force. Information regarding the categories of force for each use of force perpetrated by the Defendants is provided to the Defendants through the training officers receive in the academy, in accordance with POST standards and SJPD policies. As well as general training provided to officers placing them on notice of the possibility of serious injury or death arising from certain uses of force.

Further, consideration of the resulting injury is relevant to identifying the category of force used by an officer under San Jose Policies. Defense Expert Tassio admitted as much in his deposition; thus, total exclusion of the resulting injury should be denied. Specifically, under SJPD policy, a leg sweep with no injury is a category 1 level of force and a leg sweep requiring hospitalization is defined as a category 3 level of force. (Plaintiff Exhibit 1, Tassio 1st tx, pg. 25:8-22)

2. <u>Regarding the Analysis of Videos by Mr. Clark</u>

Defendants also seek to exclude Mr. Clark from "summarizing videos or speculating what videos show or do not show".  Here, Mr. Clark intends to opine that the use of force by the involved officers, both deadly and non-deadly, was inappropriate and violated police officer training, standards, and tactics.  Mr. Clark bases his opinions on the evidence he reviewed, including the videos and multiple percipient witness statements, all of which show the actions of each Defendant and the Plaintiff. Specifically, that Defendant Hoqoq hit Minor Ramirez with the baton, as well as providing necessary context as to the totality of the circumstances for each use of force by officers.

Like Mr. Clark, the defense's retained expert Tassio also relies on the videos of the incident

to form their opinions.  (Plaintiff Exhibit 1 Tassio First tx; pg. 14:11-22, Defense Exhibit H, pg 3:¶6; pg. 5:¶2; pg 6:¶6)  In fact, everything that defense counsel is concerned about Mr. Clark testifying about is found repeatedly in defense expert Tassio's use of force report, was repeated in their deposition testimony, and is what they intend to offer at trial.

Mr. Clark is expected to opine that if Defendant Hoqoq intentionally struck Minor Ramirez in the head with a baton, it would be considered the use of deadly force under POST and SJPD policies. Defendant Hoqoq and Defense Expert Tassio both agree that an intentional strike to the head with a baton would constitute the use of deadly force. (Plaintiff Exhibit 1 Tassio First Tx.pg. 12:12-19; Defense Exhibit F Hoqoq tx; pg. 43:7-11) Further, Defendant Hoqoq admitted he intentionally struck Minor Ramirez in the face. (Defense Exhibit F Hoqoq tx; pg. 26:6-9) The only dispute is whether it was with a baton or a fist. If Defendant Hoqoq intentionally struck Minor Ramirez in the face with a baton that use of force would be inappropriate and violate police officer standards, training, and tactics. (Plaintiff Exhibit 1 Tassio First Tx.pg. 12:12-19; Defense Exhibit F Hoqoq tx; pg. 43:7-11)

Further, defense expert Tassio opines in his report and intends to opine at trial that Defendant Reynolds allegedly "guided" Ms. Lopez during the leg sweep to "protect" her and bases his opinion on his review of the video.

Both experts intend to rely on their review of the video as a basis for their opinions. Allowing both experts to discuss what they saw helps explain how they formulated those opinions in conjunction of their training and experience.  *See A.B. v. Cnty. Of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982, at *2 (S.D. Cal. July 31, 2020) (ruling that "it would be odd for [a police-practices expert] to present his ultimate conclusions in a vacuum without explaining how he reached those conclusions.").

3.    Regarding Mr. Clark's Opinions on the Reasonableness of Force

Defendants argue that expert opinion as to whether or not the use of force was reasonable or not under the circumstances is an inadmissible legal conclusion.  Here, it is the Plaintiffs'

position that the experts (on both sides) should be able to offer opinions as to whether the use of force was reasonable or not, and the rules in the Federal Court allow for such opinions.  In the alternative, police practices experts from both sides should be permitted to opine on whether the use of force was appropriate and whether it was consistent with or violated police officer standards, training, and tactics.

Defendants also seek to exclude Plaintiffs' police practices expert, Mr. Clark, from opining that it was inappropriate, in violation of law enforcement training, standards, and tactics for Defendant Reynolds to perform a leg sweep on Ms. Lopez as she did not pose a credible threat of injury based on the totality of the circumstances.

However, the defense's police practices expert Tassio repeatedly opines that Defendant Reynolds' use of force was appropriate and consistent with police officer training, standards and tactics, that Ms. Lopez was unlawfully resisting, and that she posed a significant threat to the officers and the public, justifying the use of force against her.  See Exhibit H (page 9 ¶6,7). Defendant Tassio also opines that the use of force by Defendants McClure and Hoqoq were appropriate and justified. (Exhibit H, pg.5 ¶4,5,6, pg. 6 ¶6,7, pg.7 ¶6). Apparently, Defendants only take issue with this opinion when it is offered by the Plaintiffs' police practices expert, while finding it perfectly acceptable when it is offered by their own police practices expert. Obviously, it would be substantially prejudicial to Plaintiffs to allow Defendants' expert to offer these opinions and, at the same time, preclude Plaintiffs' expert from doing the same.  In other words, it would not be a "fair playing field" to allow Defendants' expert to give this opinion, while precluding Plaintiffs' expert from giving his opinion on the issue.  Further, contrary to Defendant's Motion, Mr. Clark will not be opining as to the "legality of Defendants' actions" and Plaintiffs expect the defense to do the same.  Plaintiffs have no issue with the court making a specific ruling that neither expert provide an opinion regarding the legality of the actions of each Defendant Officer.

### 4.  Regarding Alleged Credibility Determinations

Further, Mr. Clark does not intend to offer "credibility determinations", and would

assume that the defense will also not attempt to have any of their experts do the same.  However, Mr. Clark should be permitted to comment on whether the physical evidence or forensic evidence is consistent or not with the Defendant Officer's version of events.

Further, it is anticipated that the defendants' police practices expert Tassio will opine that the use of force by each Officer did not constitute excessive force, was appropriate and consistent with police officer standards, training, and tactics, despite not having first given a verbal warning, and that it was not feasible to do so. ((Exhibit H, pg.5 ¶4,5,6, pg. 6 ¶6,7, pg.7 ¶6, Plaintiff Exhibit 2, 2nd Tassio tx, pg 18:7-18) As well as a credibility determination as to whether Defendant Hoqoq used a baton instead of a hand strike. (Plaintiff Exhibit 1, 1st Tassio tx, pg. 14:11-22)  It would be patently unfair to allow only the defense to comment on whether the physical or forensic evidence matches the Defendant Officer's version of events.

5.    Regarding Mr. Clark's Opinion About the Level of Resistance of Each Plaintiff

Defendants also seek to exclude Mr. Clark from opining about the level of resistance by each Plaintiff, whether they posed a threat or not, and whether their actions were assaultive behavior. (See Defense Exhibit H).  Here, each Plaintiff's resistance is a factor for the jury to consider under the model Fourth Amendment jury instruction in deciding whether or not the less lethal and lethal force were appropriate.  Manual of Model Civil Jury Instructions for the Ninth Circuit 9.22.  Further, defendants fail to mention that their retained police practices expert Mr. Tassio, offers several opinions regarding each Plaintiff's alleged resistance, alleged combative nature, and the alleged threat that each Plaintiff posed to the Defendant Officers, (Defense Exhibit H, pg.5 ¶4,5,6, pg. 6 ¶6,7, pg.7 ¶6, Plaintiff Exhibit 2, 2nd Tassio tx, pg 18:7-18)

Further, police officers are trained, including with their own SJPD policy, that individuals need to present a threat of serious injury or death to justify the use of deadly force, such as the intentional striking of a suspect's head with a baton or slamming a suspect's head against the ground.  (Plaintiff Exhibit 1 Tassio First Tx.pg. 12:12-19; 41:9-17; Defense Exhibit F Hoqoq tx; pg. 43:7-11) Mr. Clark is expected to testify (and Defense Expert Tassio is expected to testify to the opposite) that officers are trained regarding these requirements/policies, and that based on the

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION

videos, which are also corroborated by the percipient witness testimony, each Plaintiff did not appear to display a threat of serious injury or death, and that using deadly force under such circumstances would be inappropriate and in violation of police officer standards, training and tactics.

6.   Regarding Mr. Clark's Opinions Allegedly Failing Rule 702 Based on Methodology

Defense counsel balks at and is flabbergasted at Mr. Clark for having a different opinion than Officer Tassio, the defense expert who still works for the Defendant City of San Jose. Mr. Clark provides his expert opinion based upon his review of the totality of the circumstances

Defense counsel's citation to Claar v. Burlington N. R.R., 29 F.3d 499 (9th Cir. 1994) is distinguishable. In Claar, the toxicologist was found to have failed to consider other alternatives, did not fully review all relevant records/test results, and cited evidence that only partially supported the expert's opinions.

This is easily distinguishable from the instant case, as there is no allegation that Mr. Clark failed to review material evidence, consider alternatives, or relied on partial evidence to create a "pre-committed" opinion as defense alleges. Two experts can have different opinions based on the totality of the circumstances, just as two juries or judges can, based on the same evidence.

Further, the scientific methodology that defense claims is lacking is not the type that would apply to this analysis in the same way it would to an accident reconstruction expert or medical diagnosis. Mr. Clark applies the same standard of review that defense expert Tassio did. (see Defense exhibit H pg 2, pg.5 ¶4,5,6, pg. 6 ¶6,7, pg.7 ¶6) A review of relevant material evidence, which is viewed through the lens of someone with extensive law enforcement experience, trained in POST standards, and versed in San Jose Police Department policies.

The same reasoning applies to defense counsel's concerns about no application of "error rates" to Mr. Clark's analysis. Such a review would not apply to this form of analysis. An error rate is suited to objectively verifiable tests such as a breathalyzer, blood draw results, or lidar guns.

7.  <u>Regarding the Relevance of Mr. Clark's Case Intake Methods</u>

Defense claims that Mr. Clark is biased because he only chose to accept cases that, based on his initial review of the evidence, showed some form of unreasonable force by the officers. Defense counsel provides no evidence or testimony that Mr. Clark accepts every single case that he reviews. In fact, Mr. Clark testified he only accepts cases that meet his standards. Specifically:

> "Q. And so it sounds—it sounds like what you're saying is generally speaking if you—after reviewing a case you believe that the force used was appropriate, that's an instance where you normally would not take the case?
>
> A.  That's where I will always not take the case"
> (Defense Exhibit B, Clark tx, pg. 19:17-22)

It is mind-boggling that defense counsel believes Mr. Clark should accept a plaintiff's case in which he believes the officers did nothing wrong, and then expert testimony at deposition or trial stating that the Officers did nothing wrong, in order for defense counsel to believe he is "fair." Or an expectation that a plaintiff's attorney would want to hire Mr. Clark after he advises them that he believes that the officer's actions were reasonable.

Defense counsel's "shock" is akin to being surprised that a Dr. only performs surgeries on people he believes actually need the surgery after a proper review or diagnosis.

8.  <u>Regarding Lincoln Han's Expert Testimony on the Technical Application of Leg Sweeps</u>

As a preliminary matter, Plaintiffs agree that Mr. Han is not a police practices expert, does not have POST certifications, did not review all documents produced in discovery, and will not provide a legal opinion as to whether Defendant Reynolds used excessive force or regarding Defendant Reynolds' state of mind in regard to any attempts to "punish" Ms. Lopez.

That being said, defense counsel misunderstands the purpose of Mr. Han's testimony and his background. Mr. Han is presented solely as an expert in leg sweeps and their technical application. Mr. Han is supremely qualified to discuss and provide an opinion on body mechanics, technique, positioning, range, hand placement, and best practices for guiding a body

during a leg sweep.

Mr. Han is a highly decorated judo black belt and instructor who can assess the technical application of Defendant Reynolds's leg sweep and provide his analysis of why Ms. Lopez hit the ground as she did. Such testimony will assist the trier of fact, as technical leg sweeps of the nature that Defendant Reynolds performed are not intuitive, and the technical understanding of how to protect or limit injury to a throwee is something that Mr. Han can assist the jury with.

Defendant Reynolds, the perpetrator of the leg sweep, is unable to provide any analysis of the leg sweep as he had never practiced it before and can't even say what he did or didn't do to try to prevent injury to Ms. Lopez. (Defense Exhibit E, Reynolds tx, pg. 31:22-25; pg 59:16-19)

Further, defense expert Tassio intends to provide expert testimony with significantly less leg sweep experience and intends to provide technical application testimony regarding the physics of the leg sweep that seems to be rooted in his gut feeling rather than actual experience or an actual understanding of basic physics or gravity. (Plaintiff Exhibit 1, Tassio 1st tx, pg. 47:23-25/pg. 48:1-25/pg. 49:1-17, Defense Exhibit H pg.9, ¶7)

Mr. Han has the background and knowledge to explain why Ms. Lopez and Defendant Reynolds landed the way they did based on a qualified background and experience, and to explain how the leg sweep could have been different and or more safely performed. For example, by turning the throwee during the sweep so they land on their back or side, avoiding serious injury from a strike to the head or neck. As well as the pros and cons of how hand placement is made during a throw, and the pros and cons of continuing to either hold on or let go of a throwee before that throwee hits the ground.

It would be prejudicial to only allow Defense Expert Tassio to provide such an opinion, who lacks even remotely similar experience in the technical application or analysis of leg sweeps and who plans to testify on a gut feeling rather than an articulated analysis of the actual throw.

Further, Mr. Han is not required to review all the documents from the case because he is not expected to testify regarding police practices or the totality of the circumstances.

Defendant's claim that there is a gap because Mr. Han did not read Defendant Reynolds'

claim that he performed the leg sweep because he did not want to be kicked again is irrelevant. Again, Mr. Han is not being presented as an expert to testify as to the reasonableness of the leg sweep; therefore, context as to Defendant Reynolds' state of mind does not matter. A leg sweep could be justified, but the application could still be performed in a way that violates either the negligence standards alleged in Plaintiff's complaint or the excessive force standards. Mr. Han's testimony will assist the trier of fact in coming to its own conclusion.

9. Regarding Mr. Han's Report Allegedly Being Incomplete

Defense counsel alleges that Mr. Han's report is incomplete and is missing all possible information he intends to provide at trial. Defense counsel backs this claim by cherry-picking the deposition quote from Mr. Han, wherein he states that he did not list every possible alternative in terms of other throws or leg sweeps that Defendant Reynolds could have performed. However, reading just the next few sentences clearly shows that Mr. Han indicated that the number of alternatives was too numerous, that the alternatives listed in his report were sufficient for his opinion, and that he proceeded to describe them. (Defense Exhibit D, pg. 36:5-25/pg. 37:1-25) Mr. Han also advises that if he is asked a specific question by defense at trial, he would answer it and is unable to anticipate in his report every opinion that defendant's questions would require.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion be denied in its entirety.

Respectfully submitted,

DATED:  July 2, 2026                    LAW OFFICE OF GUSTAVO MAGANA


                                        By  /s/ Gustavo Magana
                                            GUSTAVO MAGANA, ESQ.
                                            Attorneys for Plaintiffs