Gustavo Magaña (SBN 305970)
The Law Office of Gustavo Magaña
4701 Patrick Henry Dr. Bldg 16 Suite 15F
Santa Clara, CA 95054
TEL.: (408) 430-0411
FAX: (800) 650-9326

Counsel for Plaintiffs:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
San Jose Division

| | |
|---|---|
| Angelique Lopez *et al.*, Plaintiffs, vs. City of San José *et al.*, Defendants. | CASE NO.: 5:24-cv-07926-NC<br>**Plaintiffs Motion In limine No. 2**<br>Dept: Courtroom 5-4th floor<br>Judge: Nathanael Cousins<br>Trial Date: October 13, 2026 |

Plaintiffs hereby submit the following motion in limine.

**<u>Motion in limine no. 2</u>**

Plaintiff Angelique Lopez respectfully move the court in limine for on order precluding Defense Expert Lee Tassio from opining on whether Defendant Reynolds attempted to "control" Ms. Lopez's fall during the leg sweep. Specifically, Defendant Tassio intends to argue Defendant Reynolds intentionally held onto Ms. Lopez and guided her during the leg sweep in order to prevent injury. His entire basis for this opinion rests solely on his viewing of the bodycam footage. Defendant Tassio testified as follows in deposition:

"Q. How do you know that by keeping his hand on her, that it slowed her fall?
A. I can see it in the video we just watched.

Q. I'm not someone with a degree in physics or anything like that, but an object in motion stays in motion, right, unless something prevents it from continuing its path forward. And so if he's pushing her down, and he continues to keep his hand on her and falling forward, his mass is going down along with her mass. Wouldn't that—how would that slow her down without an opposite force pulling her back?

A. It's my opinion, based on the video we watched and the body-worn camera footage I watched when I reviewed this, that he maintained control of her while she fell, and that slowed her descent and was adequate to try and provide for her safety, given the fact that she was in handcuffs and was posing an immediate threat to her. That's just my opinion of the incident as I see it."

(1/22/2026, Tassio tx pg. 48:25/pg. 40:21)

In the instant case, the parties have already stipulated that neither expert may testify as to what facts are demonstrated or supported by the video evidence. (See the parties joint stipulation section 3(a) )

However, the deposition testimony clearly shows that Defense expert Tassio intends to offer an expert opinion based solely on what he believes he saw in the video. Tassio's opinon is not based on any testimony or police report written by Defendant Reynolds himself and is mere speculation. In fact, Tassio never read Defendant Reynolds deposition transcript in this matter, nor did he interview him as part of his use of force review. If he had, he would have discovered that Defendant Reynolds did not attempt to assist or guide Ms. Lopez during the leg sweep in order to protect her from injury. The testimony shows he was focused on protecting only himself.

"Q. So before you performed the leg sweep maneuver, were you concerned that you could be striking Ms. Lopez's head on the cement or concrete?

Mr. Eggleston: Same objection.

A. No.

Q. And why not?

A. That wasn't going through my head at the time.

Q. What was going through your head at the time?

A. I didn't want to be kicked again and get injured, so…" (Reynolds tx, pg. 30:24/pg. 31:9)

During the deposition, Defendant Reynolds further elaborated on his lack of awareness regarding assisting or "controlling" Ms. Lopez safely during her fall. Specifically:

"Q. I just want to make sure because earlier, I asked if you had ever done this to somebody, who was handcuffed behind their back and you said, no, so I wanted to make sure that hadn't changed. What steps did you take to ensure that Ms. Lopez did not strike her head against the cement or concrete after your leg sweep?

Mr. Eggleston: Objection. Vague.

A. I don't know." (Reynolds tx. pg. 31:18/pg. 32:2)

Under FRCP 702, an expert is permitted to testify in the form of an opinion if their specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue. However, such opinion is subject to certain criteria. Specifically, the Ninth Circuit has "outlined four criteria to determine the helpfulness of expert testimony: "1) qualified expert; 2) proper subject; 3) conformity to a generally accepted explanatory theory; and 4) probative value compared to prejudicial effect." *United States v. Amaral,* 488 F.2d 1148, 1153 (9th Cir. 1973).

In the instant case, the opinion to be excluded is whether Defendant Reynolds intentionally held onto Ms. Lopez to guide or control her fall as a means to keep her safe. However, Tassio's proffered opinion is based solely on watching the bodycam footage, narrating what he sees Reynolds doing, and speculating as to what Defendant Reynolds intended to do. There is no probative value to Tassio's opinion. Tassio's opinion is not based on testimony by Defendant Reynolds, accident reconstruction, mathematical principles, the police report, or any other such documentary evidence other than a video.

Such an opinion is within the purview of the jury to determine what the video shows and exactly what Defendant Reynolds did or did not do during Ms. Lopez's fall. Further, Tassio's opinion regarding control during the fall should be excluded under FRCP 403 as more prejudicial

than probative as a jury will only be confused by his speculative opinion wrapped in the authority of a supervising officer.

DATED: 9/15/26 LAW OFFICE OF GUSTAVO MAGAÑA

By: *Gustavo Magaña*
Gustavo Magaña